**2018 BNH 002**　　　**Note:　This is an unreported opinion.　Refer to LBR 1050-1 regarding citation.**
_____

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF NEW HAMPSHIRE

In re:　　　　　　　　　　　　　　　　　　　　　Bk. No. 16-11327-BAH
　　　　　　　　　　　　　　　　　　　　　　　　Chapter 13
Kenneth Alan Hatton and
LuAnn Teresa Hatton,
　　　　　　　Debtors


Kenneth Alan Hatton,
　　　　　　　Plaintiff


v.　　　　　　　　　　　　　　　　　　　　　　Adv. No. 17-1053-BAH

TD Bank, N.A.,
　　　　　　　Defendant

*Kristina Cerniauskaite, Esq.*
*Harman Law Offices*
*Exeter, New Hampshire*
*Attorney for Plaintiff*


*Elizabeth M. Lacombe, Esq.*
*Duane Morris LLP*
*Hartford, Connecticut*
*Attorney for Defendant*

## <u>MEMORANDUM OPINION</u>

## I.  INTRODUCTION

The Debtor Kenneth A. Hatton (the "Debtor")[1] filed an eight count complaint (Doc. No.

1) (the "Complaint") against Defendant TD Bank, N.A. (the "Bank") requesting that the Court

(1) enter a declaratory judgment setting the amount of the Bank's secured claim; (2) find that the

_____

[1] LuAnn Hatton, the Debtor's wife, filed a joint chapter 13 bankruptcy petition with the Debtor.  She
passed away in February 2017, before this adversary proceeding was filed.

Bank is liable for breach of contract, violation of the Real Estate Settlement Procedures Act of 1974 ("RESPA"), violation of the Truth in Lending Act ("TILA"), violation of New Hampshire RSA 358-C, misrepresentation, promissory estoppel, and intentional infliction of emotional distress; and (3) award damages to the Debtor, including actual damages, damages for emotional distress, and attorney's fees and costs.  The Bank filed a Motion to Dismiss Plaintiff's Complaint (Doc. No. 18) (the "Motion to Dismiss") seeking to dismiss all counts of the Complaint on various grounds, including that the Debtor's claims are untimely and barred as a matter of law.  The Debtor objected to the Motion to Dismiss (Doc. No. 33).  The Bank filed a reply (Doc. No. 34) and also a post-hearing response (Doc. No. 37).  After a hearing held on December 13, 2017, the Court took the Motion to Dismiss under advisement.

This Court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a) and Local Rule 77.4(a) of the United States District Court for the District of New Hampshire.  This is a core proceeding in accordance with 28 U.S.C. § 157(b).

## II.  MOTION TO DISMISS STANDARD

"In litigating adversary proceedings in bankruptcy, the standards embedded in Federal Rule of Civil Procedure 12 apply."  Privitera v. Curran (In re Curran), 855 F.3d 19, 24 (1st Cir. 2017); see also Fed. R. Bankr. P. 7012(b).  Pursuant to Rule 12(b)(6), a court must dismiss a complaint if it fails to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6); see also Privitera v. Curran (In re Curran), 554 B.R. 272, 279 (B.A.P. 1st Cir. 2016), aff'd, Curran, 855 F.3d 19.  The First Circuit Bankruptcy Appellate Panel has analyzed Supreme Court precedence and described the standard as follows, quoting Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009):

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." [Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)]. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id. at 556, 127 S.Ct. 1955. . . . The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. [Id.] Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" Id. at 557, 127 S.Ct. 1955.

556 U.S. 662, 678-79, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

> When considering a motion brought pursuant to Rule 12(b)(6), the court must treat all well-pleaded allegations in the complaint as true, and must view them in the light most favorable to the plaintiff. Gray, 544 F.3d at 324. However, the court need not accept as true conclusory allegations or legal characterizations cast in the form of factual allegations. Twombly, 550 U.S. at 555–56, 127 S.Ct. 1955.

Curran, 554 B.R. at 279-80. The First Circuit Court of Appeals has further explained:

> It is well established that affirmative defenses . . . may be raised in a motion to dismiss an action for failure to state a claim. See Keene Lumber Co. v. Leventhal, 165 F.2d 815, 820 (1st Cir.1948) (finding statute of frauds defense to be properly raised in a motion to dismiss); see also LaChapelle v. Berkshire Life Ins. Co., 142 F.3d 507, 508 (1st Cir.1998) (acknowledging the appropriateness of a motion to dismiss raising a statute of limitations defense); 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1357, at 354-56 (2d ed.1990) (citing numerous cases considering affirmative defenses, including statute of frauds, on motions to dismiss). However, it is equally well settled that, for dismissal to be allowed on the basis of an affirmative defense, the facts establishing the defense must be clear "on the face of the plaintiff's pleadings." Aldahonda-Rivera v. Parke Davis & Co., 882 F.2d 590, 591 (1st Cir.1989) (discussing the issue with respect to a statute of limitations defense); accord Wright & Miller, supra, at 348-49 (collecting cases adopting this view); see also Keene, 165 F.2d at 820 (finding dismissal on statute of frauds grounds appropriate where the fact that the agreement was oral was apparent "from the face of the complaint"). Furthermore, review of the complaint, together with any other documents appropriately considered under Fed.R.Civ.P. 12(b)(6), must "leave no doubt" that the plaintiff's action is barred by the asserted defense. LaChapelle, 142 F.3d at 508 (affirming dismissal based on statute of limitations defense where dates included in complaint showed limitations period was exceeded and complaint "failed to sketch a factual predicate that would warrant the application of equitable estoppel" to toll the running of the statute); compare Cervantes v. City of San Diego, 5 F.3d 1273, 1277 (9th Cir.1993) (finding dismissal based on statute of limitations defense inappropriate where the complaint "adequately allege[d] facts showing the potential applicability of the equitable tolling doctrine" (emphasis in original)).

Blackstone Realty LLC v. F.D.I.C., 244 F.3d 193, 197 (1st Cir. 2001).

Against this legal backdrop, the Court must determine whether the factual allegations in the Complaint set forth plausible claims for the relief requested by the Debtor and whether any affirmative defenses raised by the Bank warrant a finding that the Debtor's claims are barred and therefore subject to dismissal.

## III. BACKGROUND

The Court draws the following factual background from the Complaint and the exhibits attached to it, which the Court accepts as true statements for purposes of the Motion to Dismiss, as well as from the Court's own docket.  In 1999, the Debtor and his wife purchased a residence in Merrimack, New Hampshire (the "Property").  Complaint ¶ 7.  On or about April 25, 2003, the Debtor and his wife granted a mortgage on the Property to Banknorth, N.A.[2] to secure a note promising to repay a loan of $160,000.00; the mortgage was subsequently recorded.  Id. ¶¶ 8-9.  In January 2012, the Debtor lost his job.  Id. ¶ 10.  His wife was not working at the time because of deteriorating health.  Id. ¶ 11.  Despite a lack of income, the Debtor and his wife were able to make mortgage payments in 2012 from their savings.  Id. ¶ 12.

In 2013, the Debtor applied to the Bank for a loan modification.  Id. ¶ 13.  The Bank sent the Debtor and his wife a letter dated November 21, 2013, indicating that the Bank had approved a modification of the couple's existing mortgage loan, subject to the Debtor and his wife making three qualifying payments.  Id. ¶ 14; Complaint, Ex. A.  The letter recited that "[t]he 3 qualifying

---

[2] Although not alleged specifically in the Complaint, the Bank is apparently the successor in interest to Banknorth, N.A.  See Complaint, Ex. G ("Please note that the original creditor for your loan was Banknorth, N.A. … Please note that TD Bank, N.A. is now the holder of the subject Note and Mortgage. Further note that TD Bank, N.A. is the servicer for this mortgage loan account.").

payments of $778.04 will be used to satisfy the negative escrow balance.  In the event of an[y remaining] escrow shortage, the shortage will be spread over 12 months."   Complaint, Ex. A. The Debtors made payments of $778.04 on December 11, 2013, January 8, 2014, and February 10, 2014, for a total of $2,334.12.  Complaint, Ex. B.  On March 12, 2014, the Bank sent a letter to the Debtor and his wife indicating their request for a loan modification had been approved. Complaint, Ex. C.  The Bank enclosed with the letter the actual loan modification agreement that the Debtor and his wife needed to execute.  Id.  The letter indicated that the first payment under the loan modification was due March 1, 2014, "in the principal and interest amount of $353.39 plus escrow."  The Debtor and his wife signed the loan modification agreement on March 19, 2014, and returned it to the Bank; the Bank signed it on March 20, 2014.  Proof of Claim ("POC") 7-1.

Starting in April 2014, the Bank began sending the Debtor monthly statements that were inconsistent with the terms of the loan modification.  Complaint, Ex. D.  For example, the May 2014 statement indicated that principal and interest totaled $678.35 per month, instead of $353.39 as indicated in the March 12, 2014, letter.  Id.  The Debtor contacted the Bank numerous times to find out the correct monthly payment amount.  Complaint, Ex. E.  On May 15, 2014, the Debtor sent an email to the Bank stating that "[s]ince your letter dated 3/12/14, I have been trying to ascertain my new monthly payment due each month."  Id.  The Debtor noted further that his account was showing him past due in the amount of $1,703.00 when he believed the past due amount was $0.  Id.  In the Complaint the Debtor states that he spoke with a representative of the Bank on or about May 15, 2014, and that individual agreed with the Debtor that the amounts contained in the monthly statements were erroneous as the Bank did not apply the three trial modification payments of $778.04 to escrow in accordance with the loan modification letter. Complaint ¶ 22.

On May 16, 2014, the Bank sent the Debtor another letter again indicating the loan modification had been approved and indicating the Debtor's new monthly payment starting March 1, 2014, would be $1,173.57, consisting of $353.39 for principal and interest and $820.18 for escrow.  Complaint, Ex. I.  Thereafter, the Debtor again spoke with a representative of the Bank who told the Debtor that the monthly payment amount was actually $763.48, not $1,173.57, which was the amount stated in the most recent letter.  Complaint ¶ 24; Complaint, Ex. D.  Nonetheless, the Debtor's June 2014 statement showed a regular monthly payment of $1,173.57 and a past due amount of $1,173.57.  Complaint, Ex. D.  The Debtor contacted a representative of the Bank via email on July 25, 2014, again complaining that his account continued to show past due amounts.  Complaint, Ex. L.  In the email, the Debtor specifically noted that he believed the issue stemmed from a miscalculation of the property tax escrow.  Id. The Bank's representative replied to the Debtor on August 6, 2014, explaining that the "escrow amount increased to cover unpaid escrow."  Id.

On September 5, 2014, the Bank sent the Debtor an escrow analysis which miscalculated the actual escrow arrearage as of March 1, 2014.  Complaint ¶ 27; Complaint, Ex. K.  The escrow analysis reflected a shortage of $2,816.39.  Complaint, Ex. K.  The Debtor contends that the Bank never corrected its miscalculation of the escrow arrearage despite the Debtor's repeated attempts to get it to do so.  Complaint ¶¶ 28 and 30.

Starting in September 2014, the Debtor's statements reflected a regular monthly payment of $815.00, which was consistent with a letter from the Bank dated September 5, 2014. Complaint, Exs. D and K.  The payment amount was later reduced to $694.00 for the payment due June 1, 2015.  Complaint, Ex. D.  Ongoing monthly statements from September 2014 to January 2016 continued to reflect past due amounts ranging from $1,487.00 to $5,136.00 during this period.  Id.  In addition, the statements showed numerous charges for late fees, property

inspections, and appraisal fees; the Debtor contends these were erroneously charged.  Complaint

¶ 29.  The Debtor states the Bank rejected and returned many of his payments starting in 2015.

Complaint ¶ 32.

In February 2016, the Bank commenced foreclosure proceedings.  Complaint ¶ 35.  In

response, the Debtor sent a letter to the Bank's attorney on March 21, 2016, indicating the

amount due the Bank was incorrect and stating that "I have been trying since my loan

modification dating back to March, 2014 to correct it. … I have communicated with TD Bank

via numerous telephone calls, emails and met in person with management at my local branch in

Merrimack, NH.  An abundance of information has been supplied to the bank proving the

balance owing has been false since the modification."  Complaint, Ex. L (emphasis added).

On September 21, 2016, the Debtor and his wife filed a chapter 13 bankruptcy case.

Complaint ¶ 26.  The Bank filed a proof of claim on January 17, 2017.  POC 7-1.  The proof of

claim reflects a total amount due of $133,664.72 with a prepetition arrearage of $16,322.46,

consisting of principal and interest of $10,289.00, prepetition fees of $2,134.25, and an escrow

deficiency for funds advanced of $3,899.21.  Id.  The Debtor contends that the Bank's claim

contains incorrect amounts.  Complaint ¶ 38.  On June 30, 2017, the Debtor filed this adversary

proceeding.  The Debtor states he has suffered damages as the result of the Bank's actions in the

form of "improperly charged fees and other charges."  Complaint ¶ 40.  In addition, he "lost a lot

of time in repeatedly contacting TD to correct the escrow mistake and to find out the correct

payment amounts.  As a result of TD's actions Plaintiff was stressed out, upset, had trouble

sleeping, his back pain and anxiety worsened, he was short tempered, and was diagnosed with

cognitive dysfunction."  Complaint ¶¶ 41-42.

## IV. DISCUSSION

The Bank seeks to dismiss all counts of the Complaint on several theories. Accordingly the Court shall address the sufficiency of the Complaint with respect to each count by addressing each theory.

### A. Statute of Limitations Defenses

The Bank contends that various state and federal statutes of limitations apply to the Debtor's various claims and bar his claims as untimely. As a preliminary matter, the Debtor contends that the statutes of limitations were tolled by the provisions of 11 U.S.C. § 108(a). The Bank argues they were not.

Section 108(a) provides:

If applicable nonbankruptcy law, an order entered in a nonbankruptcy proceeding, or an agreement fixes a period within which the debtor may commence an action, and such period has not expired before the date of the filing of the petition, the trustee may commence such action only before the later of—

(1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or

(2) two years after the order for relief.

11 U.S.C. § 108(a)(a) (emphasis added). If § 108(a) applies, the Debtor would have had until September 21, 2018, to file his claims, i.e., two years after the September 21, 2016, filing of his chapter 13 case. He filed the Complaint on June 30, 2017.

Courts are split as to whether § 108(a) applies to chapter 13 debtors. Compare Estate of Carr v. United States, 482 F.Supp.2d 842, 850 (Bankr. W.D. Tex. 2007) ("[I]n the context of bankruptcies filed under Chapter 13, the extension offered by section 108(a) is available to Trustees only, and not to Chapter 13 debtors."), and Ranasinghe v. Compton (In re Ranasinghe), 314 B.R. 556, 567 (Bankr. E.D. Va 2006) ("[S]ince § 108(a) is not a specific trustee power of a trustee given to a chapter 13 debtor, and absent a provision allowing a chapter 13 debtor to

8

generally exercise the rights and powers of a trustee (as exists in chapter 11 when a trustee has not been appointed), a chapter 13 debtor does not receive the benefit of the § 108(a) extension. This analysis, moreover, comports with the stated policy behind § 108—allowing the trustee additional time to discover and evaluate potential causes of action after stepping into the shoes of the debtor) (internal quotations and citations omitted), and Straub v. Richardson, 92 So.3d 548, 552 (La. Ct. App. 2012) ("[W]e conclude that applying the plain language of 11 U.S.C.A. § 108 of the Bankruptcy Code, a Chapter 13 debtor is not entitled to the benefit of the § 108 two-year extension as is a bankruptcy trustee."), with Stephenson v. Chase Home Fin. LLC, Civil No.10cv2639-L(WMc), 2011 WL 2006117, at *5 (S.D. Cal. May 23, 2011) ("Although the statute speaks in terms of giving the trustee the extension of time, it may have equal force and effect when utilized by the debtor  Specifically, 11 U.S.C. Section 103 makes section 108 applicable to Chapter 13 bankruptcies.  A Chapter 13 Debtor has the trustee's capacity to sue on behalf of the estate.  Accordingly, the tolling statute applied to extend the … statute of limitations for 'two years after the order for relief.'") (citations omitted), and In re Dawson, 441 B.R. 1, 29 (Bankr. D.D.C. 2008) ("[M]y interpretation of the statute is not a case of enlarging § 108(a) to add the missing words 'chapter 13 debtor' to § 108(a) … Instead, my interpretation reads § 108(a) as modifying the limitations on a trustee's powers under § 363, and thus modifying the limitations applicable to the power of a chapter 13 debtor (who by reason of § 1303 is subject to the same limitations) when suing pursuant to the power of a trustee under § 363."), and McConnell v. K-2 Mortg. (In re McConnell), 390 B.R. 170, 181 (Bankr. W.D. Pa. 2008) ("It is the opinion of this Court that holding 11 U.S.C. § 108(a) applicable to Chapter 13 debtors suing on behalf of the estate is not only consistent with the legislative purpose of the Code, but also the statutory text of the Code.").

In the Court's view, the better reasoned decisions are those that hold that § 108(a) cannot be used by chapter 13 debtors to toll the time period for commencing an action. By its very terms, § 108(a) applies to actions that may be commenced by a "trustee," not to actions commenced by a "debtor." The Court need not engage in a convoluted statutory interpretation to reach a conclusion that would conflict with the plain language of the Bankruptcy Code: "trustee" means "trustee." For that reason, the Court holds that chapter 13 debtors are not entitled to the protections of § 108(a). Therefore, the statutes of limitations applicable in this case have not been tolled by the Debtor's bankruptcy filing.

> 1. **RSA 508:4(I) Applicable to Debtor's State Law Claims in Count I (Breach of Contract); Count IV (Violation of RSA 358-C); Count V (Promissory Estoppel); Count VI (Misrepresentation); and Count VII (Intentional Infliction of Emotional Distress)**

In New Hampshire, there is a three-year statute of limitations for personal actions. RSA 508:4(I).[3] This three-year statute of limitations applies to the Debtor's state law claims in Count I (Breach of Contract), Count IV (Violation of RSA 358-C), Count V (Promissory Estoppel), Count VI (Misrepresentation), and Count VII (Intentional Infliction of Emotional Distress).[4]

---

[3] "Except as otherwise provided by law, all personal actions, except actions for slander or libel, may be brought only within 3 years of the act or omission complained of, except that when the injury and its causal relationship to the act or omission were not discovered and could not reasonably have been discovered at the time of the act or omission, the action shall be commenced within 3 years of the time the plaintiff discovers, or in the exercise of reasonable diligence should have discovered, the injury and its causal relationship to the act or omission complaint of." RSA 508:4(I).

[4] "A cause of action arises, thereby triggering the running of the three-year statute, once all the elements necessary for such a claim are present." Therrien v. Sullivan, 153 N.H. 211, 213 (2006). With respect to contract claims, the limitations period begins running at the time of the alleged breach. Coyle v. Battles, 147 N.H. 98, 100 (2001). With respect to tort claims, "[a] tort victim's cause of action accrues and the statute of limitation begins to run at the moment the tortfeasor completes the tortious act." Sinclair v. Brill, 857 F.Supp. 132, 135 (D.N.H. 1994).

### a.   Count I (Breach of Contract)

In Count I, the Debtor contends that "[t]he modification letter, the modification agreement, and the mortgage collectively constitute a contract" between the Debtor and the Bank.  The Debtor sets forth the alleged breaches of this contract in ¶¶ 45-48 of the Complaint.[5]

As argued by the Bank, all of these alleged breaches of the parties' contract stem from the initial injury to the Debtor caused by the Bank failing to apply the three payments of $778.04 to the negative escrow balance when paid on December 11, 2013, January 8, 2014, and February 10, 2014.  The Debtor's Complaint and exhibits attached thereto make it clear that the Debtor was aware, no later than May 15, 2014 (the date he spoke to a representative of the Bank and the date he sent an email to the Bank) that the Bank had not properly applied the trial modification payments to the escrow balance and that, as a result, thereafter, the amounts on his monthly mortgage statements were incorrect.  Complaint ¶ 22 ("Plaintiff spoke with Stephen Almasi on or about May 15, 2014. *See* EXHIBIT E. Mr. Almasi agreed with Mr. Hatton that the numbers contained on the statements were in error. Specifically, he explained that TD did not apply the 3 payments of $778.04 pursuant to the modification letter to the escrow.") (emphasis added); Complaint, Ex. E ("Since your letter dated 3/12/14, I have been trying to ascertain my new monthly payment due each month … Obviously, the past due should be $0, as I have paid the $353.39 + $424.62 for taxes for a total of $778.01 in March and April (this was a guestimate from an individual at the bank).") (emphasis added); Complaint, Ex. L ("[T]he referenced

---

[5] 45. TD breached the contract by failing to apply the 3 payments of $778.04 to the negative escrow balance pursuant to the modification letter.

46. TD breached the contract by not allowing Plaintiff to pay off the remaining shortage over 12 months pursuant to the modification letter.

47. TD breached the contract by miscalculating amounts owed.

48. TD breached the contract by refusing and rejecting Plaintiff's payments.

amount due is incorrect.  <u>I have been trying since my loan modification dating back to March, 2014 to correct it</u> … An abundance of information has been supplied to the bank proving <u>the balance owing has been false since the modification</u>.") (emphasis added).  Thus, the Debtor's own words in correspondence with the Bank show that he was aware of the Bank's alleged breach no later than May 15, 2014.  Since the Debtor did not bring his breach of contract claim within three years of that date, but instead waited until June 30, 2017, to do so, the Debtor's breach of contract claim in Count I is time barred.

### b.   Count IV (Violation of RSA 358-C)

In Count IV of the Complaint, the Debtor alleges that the Bank is a "debt collector" within the meaning of RSA 358-C:1(VIII) and that it violated New Hampshire's Unfair, Deceptive or Unreasonable Collection Practices Act by sending the Debtor billing statements with incorrect due amounts.  RSA 358-C:3(VII) explicitly prohibits debt collectors from making "any material false representation or implication of the character, extent or amount of the debt …"  The Debtor seeks damages, attorney's fees, and costs pursuant to RSA 358-C:4, which provides that debt collectors shall be liable for "the sum of $200 plus costs and reasonable attorney's fees for each violation" or "all damages proximately caused by the violation," whichever is greater.  The Complaint alleges specifically that "[s]tarting in April 2014, TD sent billing statements to the Hattons which showed large payment amounts inconsistent with the terms of the modification."  Complaint ¶ 18; <u>see</u> Complaint, Ex. D (Statement dated April 14, 2014, reflecting a monthly payment of $1,103.00 and an overdue payment of $600.00).

The Bank contends the Debtor's claim for violation of RSA 358-C is barred by the statute of limitations in RSA 508:4(I) as the Debtor was aware no later than May 15, 2014, that the Bank had made an accounting error which was immediately reflected in the monthly statements commencing April 2014.  The Debtor contends that his claim under RSA 358-C is not time

barred because the statute provides damages for <u>each</u> violation of the statute.  In support of his position, the Debtor cites <u>Gilroy v. Ameriquest Mortg. Co.</u>, Civil No. 07-cv-074-JD, 2009 WL 2169858, at *3 (D.N.H. July 21, 2009), finding that each of 200 phone calls made to the plaintiff, regarding her delinquent mortgage payments, was a violation of RSA 358-C.  The court did not address whether each violation was a separate cause of action.  It did note that RSA 358-C:4 "explicitly provides statutory damages <u>for each violation</u>, <u>not for each action</u> or up to a specific amount," thus, suggesting a distinction between a cause of action and a violation.  <u>Id.</u> at *4.

In the Court's view, the Debtor's cause of action under RSA 358-C accrued when he first realized that the Bank had sent him a statement containing a "material false representation" about the "extent or amount of the debt."  The Complaint makes clear that the Debtor realized this no later than May 15, 2014.  Each subsequent statement sent by the Bank merely compounded the initial misapplication by the Bank, i.e., each statement was just a continuing accrual of the initial injury.  Accordingly, each statement did not create a new cause of action for the Debtor.  <u>See</u> <u>Singer Asset Fin. Co., LLC v. Wyner</u>, 156 N.H. 468, 478 (2007) ("We agree with those courts that have held that '[a] claim based on a single tort ordinarily accrues with the tort is completed, and the continuing accrual of injury or damages does not extend the accrual date.'") (citations omitted).  The fact that RSA 358-C:4 provides an award of $200 for each violation only relates to the calculation of damages; it does not mean that a new cause of action has accrued.

Because the Debtor's claim under RSA 358-C accrued no later than May 15, 2014, Count IV is barred by the three-year statute of limitations as the Complaint was not filed until June 30, 2017.  For that reason, Count IV must be dismissed.

### c.    Count V (Promissory Estoppel)

Putting aside for the moment the issue of whether the Debtor has otherwise set forth a plausible claim for promissory estoppel,[6] the Court finds that this claim would be barred by the three-year statute of limitations contained in RSA 508:4(I) as well.  The Debtor's promissory estoppel claim in Count V is based on a promise made by the Bank in a letter <u>dated November 21, 2013</u>, that the Bank would apply the three trial modification payments to the Debtor's escrow balance.  As described above, the Debtor was aware <u>no later than May 15, 2014</u>, that the Bank did not apply the payments in accordance with that promise.  For that reason, Count V is time barred.

### d.    Count VI (Misrepresentation)

Again, putting aside the issue of whether the Debtor has otherwise set forth a plausible claim for misrepresentation,[7] the Court finds that this claim would also be barred by the three-year statute of limitations contained in RSA 508:4(I).  The Debtor's "misrepresentation" claim in Count VI asserts that the Bank misrepresented that the Bank would apply the three trial modification payments to the Debtor's escrow balance and that the Bank thereafter misrepresented in monthly bank statements the amounts owed by the Debtor.  Again, the Debtor was aware of these purported misrepresentations by <u>no later than May 15, 2014</u>.  Accordingly, the Debtor's claim for "misrepresentation" is barred by the three-year statute of limitations of RSA 508:4(I) and therefore Count VI must be dismissed.

---

[6] See <u>infra</u> for a further discussion of this claim.

[7] See <u>infra</u> for a further discussion regarding "misrepresentation" claims and the need to allege specifically whether the claim is for "negligent misrepresentation" or "intentional misrepresentation."

### e.   Count VII (Intentional Infliction of Emotional Distress)

Once more, putting aside the issue of whether the Debtor has otherwise set forth a plausible claim for intentional infliction of emotional distress,[8] the Court finds that this claim would also be barred by the three-year statute of limitations contained in RSA 508:4(I).  In Count VII, the Debtor alleges that the Bank intentionally inflicted severe emotional distress on him by: (a) misrepresenting to the Debtor that the three qualifying payments of $778.04 would be applied to cure the negative escrow balance; (b) sending the Debtor billing statements showing incorrect amounts due; (c) telling the Debtor through its representative to pay amounts which differed from the amounts showed on the billing statements; (d) charging the Debtor late and other fees and charges; (e) refusing to accept and/or rejecting the Debtor's payments; (f) forcing the Debtor's loan into default; (g) forcing the Debtor's loan into foreclosure; (h) forcing the Debtor into bankruptcy; and (i) submitting a proof of claim containing incorrect information. The Debtor suggests that these actions constitute separate wrongdoing, which lasted for a period of time, preventing at least the later events from being barred by the statute of limitations.  As noted previously, however, the injuries about which the Debtor complains all stem from the Bank's failure to apply the trial modification payments in accordance with the November 2013 letter;[9] as described above, the Complaint and its exhibits establish that the Debtor was aware of the accounting errors <u>no later than May 15, 2014</u>.  For that reason, Count VII is also time barred.

---

[8] See <u>infra</u> for a further discussion of this claim.

[9] In New Hampshire, "the discovery rule does not assist a plaintiff who is aware of her injury and the cause of her injury at the time of [the] complained of act and brings an action after the proscribed period has run claiming later-arising damages."  <u>Sinclair v. Brill</u>, 857 F.Supp. 132, 139 (D.N.H. 1994) (citing <u>Rowe v. John Deere</u>, 130 N.H. 18, 21 (1987)).  Essentially, that is what the Debtor seeks to do here.  He was injured as a result of the Bank's failure to properly apply his three trial modification payments.  All other injuries and harm—the incorrect bank statements, imposition of late charges, failure to apply payments, the Debtor's ultimate default, etc.—arise later because of the initial accounting error.

### 2. 12 U.S.C. § 2614 Applicable to Debtor's RESPA Claims in Count II (Violation of RESPA)

In Count II of the Complaint, the Debtor has asserted claims under certain provisions of RESPA, specifically 12 U.S.C. §§ 2605 and 2609.[10]  With respect to claims asserting a violation of 12 U.S.C. § 2605, pursuant to 12 U.S.C. § 2614, such an action must be brought "within 3 years" of the violation.[11]  The Debtor describes the violation under § 2605 as "failing to promptly correct the escrow mistake," without describing any particular meaning to "promptly." Complaint ¶ 52.  Nevertheless, as detailed above, the Debtor was aware of the escrow issue by no later than May 15, 2014.  Because the Debtor did not bring his RESPA claim under § 2605 until June 30, 2017, more than three years after he knew of the violation, this RESPA claim is barred by the statute of limitations set forth in 12 U.S.C. § 2614 and must be dismissed.

### 3. 15 U.S.C. § 1640(e) Applicable to Debtor's TILA Claims in Count III (Violation of TILA)

In Count III, the Debtor alleges that the Bank violated TILA, specifically 15 U.S.C. § 1639(f), by (1) failing to properly credit the three trial modification payments of $778.04, and (2) failing to accept and credit payments the Debtor attempted to make in 2015.  The Bank objects to this claim on the grounds that it is untimely pursuant to 15 U.S.C. § 1640(e).  Section 1640(e) provides in relevant part that "any action under this section may be brought in any United States district court, or in any other court of competent jurisdiction, within one year from the date of the occurrence of the violation." 15 U.S.C. § 1640(e) (emphasis added); see Moore v. Mortg. Elec. Registration Sys., Inc., 848 F.Supp.2d 107, 120 (D.N.H. 2012); Campbell v. Machias Savs.

---

[10] See infra for a discussion of why the Debtor's claim under 12 U.S.C. § 2609 must be dismissed.

[11] "Any action pursuant to the provisions of section 2605 . . . of this title may be brought in the United States district court or in any other court of competent jurisdiction, for the district in which the property involved is located, or where the violation is alleged to have occurred, within 3 years in the case of a violation of section 2605 of this title . . . ."  12 U.S.C. § 2614 (emphasis added).

Bank, 865 F.Supp. 26, 32 (D. Me. 1994) ("Actions brought under TILA generally must be filed 'within one year from the date of the occurrence of the violation.'").

The Debtor argues that he was not aware of his injury in May 2014.  As the Bank points out, the Complaint and supporting exhibits make clear that the Debtor was very much aware by the time he spoke with a Bank representative and he sent the Bank an email, both on May 15, 2014, that the trial modification payments were improperly applied and that the loan balance had been incorrect "since my loan modification dating back to March, 2014."  Complaint ¶ 22; Complaint, Ex. L.  Because the Debtor did not bring his claims within one year of that timeframe, his claim with respect to the trial modification payments is barred by the one-year statute of limitations.

With respect to payments made in 2015 that the Bank rejected, Complaint ¶ 32, the Debtor would have been required to assert his TILA claims by the end of 2016.  The Debtor only filed his adversary complaint on June 30, 2017.  Accordingly, his claim with respect to rejected mortgage payments is also barred by the one-year statute of limitations.[12]  For these reasons, Count III should be dismissed.

### B.  Additional Grounds for Dismissal

In addition to its contention that the Debtor's claims are untimely under the applicable statutes of limitations, the Bank also argues in its Motion to Dismiss that the allegations in the Complaint fail to support several of his claims.

---

[12] The Debtor again contends that 11 U.S.C. § 108(a) serves to toll TILA's one-year statute of limitations commencing on the date the Debtor filed for bankruptcy on September 21, 2016.  For the reasons set forth supra, the Court rejects that argument.

### 1. Count II (Violation of RESPA)

In Count II of the Complaint, the Debtor asserts that the Bank committed two violations of RESPA.  First, the Debtor contends the Bank violated 12 U.S.C. § 2609 "by incorrectly calculating the escrow and failing to inform Plaintiff about the escrow balance after the modification took effect."  Complaint ¶ 51.  Second, the Debtor contends that the Bank violated 12 U.S.C. § 2605 "by failing to promptly correct the escrow mistake."  The Bank seeks to dismiss the Debtor's first claim in Count II on the grounds that the Debtor's claim under 12 U.S.C. § 2609 is barred as a matter of law because there is no private right of action under that section of RESPA.  The Debtor contends that there is.  In support of his position, the Debtor cites Heller v. First Town Mortg. Corp., No. 97 Civ. 8575(JSM), 1998 WL 614197, at *4 (S.D.N.Y. Sept. 14, 1998), a decision from New York that acknowledges that there is "considerable case law" holding that there is no private of action under 12 U.S.C. § 2609 but which ultimately held that a private right of action does exist for claims under this section of RESPA.  The Bank, on the other hand, cites a decision from New Hampshire, Fogle v. Wilmington Fin., Civil No. 08-cv-288-JD, 2011 WL 320572, at *6-7 (D.N.H. Jan. 31, 2011), wherein the district court held that no private right of action for claims under 12 U.S.C. § 2603 and 2604 exists because 12 U.S.C. § 2614 only expressly provides a private right of action for actions brought pursuant to 12 U.S §§ 2605, 2607, and 2608.  In support of its position, the district court cited the case of Campbell v. Machias Sav. Bank, 865 F.Supp. 26 (D. Me. 1994), which specifically held that there is no private cause of action for violation of 12 U.S.C. § 2609.  Id. at *6.

This Court is persuaded by the reasoning of the cases from the district courts in the First Circuit, not by the case cited by the Debtor.  For that reason, the Court holds that there is no private right of action for violations of 12 U.S.C. § 2609.  Accordingly, the Debtor's claim under 12 U.S.C. § 2609 in Count II must be dismissed for failure to state a claim upon which relief may

be granted.  Because 12 U.S.C. § 2614 specifically provides a private right of action for claims under 12 U.S.C. § 2605, the Debtor's claim under 12 U.S.C. § 2605 in Count II should not be dismissed on that basis, although it still must be dismissed as barred by the statute of limitations as previously discussed.

### 2.  Count V (Promissory Estoppel)

The Debtor asserts a claim for promissory estoppel in Count V of the Complaint.  The Debtor contends that the Bank made a promise to the Debtor that the three trial modification payments would be used to satisfy the negative escrow balance and the Bank failed to make good on that promise, which promise the Debtor relied on to his detriment, ultimately being forced into default, foreclosure, and then bankruptcy.

"Under a theory of promissory estoppel, 'a promise reasonably understood as intended to induce action is enforceable by one who relies upon it to his detriment or to the benefit of the promisor.'"  Moulton v. Bane, Civil No. 14-cv-265-JD, 2015 WL 7274061, at *7 (D.N.H. Nov. 16, 2015) (quoting Panto v. Moore Bus. Forms, Inc., 130 N.H. 730 738 (1988)).  In the Motion to Dismiss, the Bank argues that the Debtor's allegations do not support a claim for promissory estoppel because promissory estoppel is reserved for those situations where there is no express contract in place.  See Moulton, 2015 WL 7274061, at *7 ("Promissory estoppel may impose liability only in the absence of an enforceable contract."); Great Lakes Aircraft Co., Inc. v. City of Claremont, 135 N.H. 270, 290 (1992) ("[I]n all instances, application of promissory estoppel is appropriate only in the absence of an express agreement.").  The Bank explains that the Debtor has explicitly alleged in the Complaint that a contract existed between the parties: "the modification letter, the modification agreement, and the mortgage collectively constitute a contract between TD and the Plaintiff."  Complaint ¶ 44 (emphasis added).  For that reason, the

Bank contends that no claim for promissory estoppel can stand.[13] The Court agrees with the Bank. In theory, the Debtor should be able to recover any damages arising from the Bank's failure to comply with the terms of the modification letter in its separate breach of contract claim.

Furthermore, even if Debtor could not bring a breach of contract claim, the Court notes that the facts do not support a promissory estoppel claim. "[T]he whole point of promissory estoppel is to enforce promises that stand beyond the reach of a claim for breach of contract." LaCourse v. Ocwen Loan Serv., LLC, Civil No. 14-cv-013-LM, 2015 WL 1565250, at *8 (D.N.H. Apr. 7, 2015). Here, according to the Complaint, what the Bank really promised the Debtor was that the Bank would enter into a mortgage loan modification if the Debtor and his wife made the three trial modification payments (that the payments would be applied to the negative escrow balance was only incidental). Complaint, Ex. A ("This document is an agreement to a qualifying payment plan which will result in a modification if completed successfully. The Modification Agreement will be sent upon successful completion of the plan …"). The Debtor made the three payments under the Bank's qualifying payment plan and the Bank subsequently executed a loan modification agreement, i.e., the Bank kept its promise. Thus, there is "nothing left of that promise for the court to enforce." LaCourse, 2015 WL 1565250, at *8.

For these reasons, Count V of the Complaint must be dismissed.

---

[13] The Court notes further that "the fulfillment of a preexisting contractual obligation cannot amount to detrimental reliance." Galvin v. EMC Mortg. Corp., Civil No. 12-cv-320-JL, 2013 WL 1386614, at *5 n.5 (D.N.H. Apr. 4, 2013). Here, based on the modification letter, the Debtor made payments that he thought would be applied toward the escrow deficiency; however, curing the escrow deficiency was already required under the existing note and mortgage and therefore cannot amount to detrimental reliance.

### 3. Count VI (Misrepresentation)

In Count VI of the Complaint, the Debtor asserts a claim for "misrepresentation." The Bank contends that Count VI fails to state a claim upon which relief can be granted as New Hampshire does not recognize a cause of action for "misrepresentation." The Bank is correct. Under the common law of New Hampshire, there are claims for "negligent misrepresentation" and "intentional misrepresentation" or "fraud." See LaCourse v. Ocwen Loan Serv., LLC, Civil No. 14-cf-013-LM, 2015 WL 1565250, at *4 (D.N.H. Apr. 7, 2015) (explaining that the elements of a claim for "negligent representation" are "a negligent misrepresentation of a material fact by the defendant and justifiable reliance by the plaintiff"); Patch v. Arsenault, 139 N.H. 313, 319 (1995) ("The tort of intentional misrepresentation, or fraud, must be proved by showing that the representation was made with knowledge of its falsity or with conscious indifference to its truth and with the intention of causing another person to rely on the representation."); see also Crowley v. Global Realty, Inc., 124 N.H. 814, 818 (1984) ("The general rule is therefore that the measure of damages recoverable for misrepresentation, whether intentional or negligent, is actual pecuniary loss.") (emphasis omitted). Because the Debtor has not specified whether he is asserting a claim for "negligent" misrepresentation or one for "intentional" misrepresentation, the Debtor has failed to state a claim, and therefore Count VI should be dismissed for this reason.

In addition, the Bank argues in the Motion to Dismiss that Count VI should also be dismissed because it would be barred by the economic loss doctrine. The economic loss doctrine is a "judicially-created remedies principle that operates generally to preclude contracting parties from pursuing tort recovery for purely economic or commercial losses associated with the contract relationship." Plourde Sand & Gravel v. JGI Eastern, 154 N.H. 791, 794 (2007) (quotation omitted); see also Wyle v. Lees, 162 N.H. 406, 410 (2011). Courts have explained:

> The economic loss doctrine is based on an understanding that contract law and the law of warranty, in particular, is better suited than tort law for dealing with purely economic loss in the commercial arena.  If a contract party is permitted to sue in tort when a transaction does not work out as expected, that party is in effect rewriting the agreement to obtain a benefit that was not part of the bargain.

Tietsworth v. Harley-Davidson, Inc., 677 N.W.2d 233, 241 (Wis. 2004) (quoted in Plourde Sand & Gravel, 154 N.H. at 794).  "[T]he rule precludes a harmed contracting party from recovering in tort unless he is owed an independent duty of care outside the terms of the contract."  Wyle, 162 N.H. at 410.  The Debtor has not shown that he was owed an independent duty of care outside the terms of the loan modification agreement.  Rather, it appears from the Complaint that all of the damages claimed by the Debtor flow from the Bank's alleged breach of the loan modification agreement.  Accordingly, the economic loss doctrine bars any claim for "misrepresentation" and provides an additional basis for dismissing Count VI of the Complaint.

### 4.   Count VII (Intentional Infliction of Emotional Distress)

In Count VII of the Complaint, the Debtor contends as follows:

The following Defendants' intentional actions are extreme and outrageous and inflicted severe emotional distress to Plaintiff:

  a.   Misrepresenting to Plaintiff that the 3 qualifying payments of $778.04 will be applied to cure the negative escrow balance;

  b.   Sending Plaintiff billing statements showing incorrect amounts due;

  c.   Telling Plaintiff through its representative Stephen Almasi to pay amounts which differed from the amounts showed on the billing statements;

  d.   Charging Plaintiff late and other fees and charges;

  e.   Refusing to accept and/or rejecting Plaintiff's payments;

  f.   Forcing Plaintiff's loan into default;

  g.   Forcing Plaintiff's loan into foreclosure;

  h.   Forcing Plaintiff into bankruptcy;

  i.   Submitting the proof of claim containing incorrect information.

As a result of Defendant's actions Plaintiff suffered severe emotional distress and was stressed out, upset, had trouble sleeping, his back pain and anxiety worsened, he was short tempered, and was diagnosed with cognitive dysfunction.

Complaint ¶¶ 72-73.

To establish a claim for intentional infliction of emotional distress, the Debtor must demonstrate that the Bank, "by extreme and outrageous conduct, intentionally or recklessly cause[d] [him] severe emotional distress." Morancy v. Morancy, 134 N.H. 493, 496 (1991) (quoting Restatement (Second) of Torts § 46 (1965)); see also Tessier v. Rockefeller, 162 N.H. 324, 341 (2011); Mikell v. Sch. Admin. Unit #33, 158 N.H. 723, 729 (2009). "In determining whether conduct is extreme and outrageous, it is not enough that a person has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by malice." Mikell, 158 N.H. at 729 (emphasis added and quotations omitted). Instead, "[l]iability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Id. (quotation omitted).

The Complaint fails to allege sufficient factual matter to state a claim for intentional infliction of emotional distress that is "plausible on its face." The Debtor has not alleged that the Bank acted with tortious, criminal, or malicious intent, let alone that its alleged conduct was outrageous and "beyond all possible bounds of decency." Rather, taking the allegations in the Complaint as a whole, the Debtor alleges that the Bank misapplied three trial modification payments, then compounded that error by sending the Debtor monthly statements showing incorrect amounts due and by improperly charging the Debtor late and other fees and charges and rejecting payments for being less than the amount due. As a result of these activities, the Debtor contends that the Bank forced the Debtor's loan into default resulting in an attempted

23

foreclosure by the Bank and the Debtor's ultimate bankruptcy filing.  The Court concludes that the allegations in the Complaint do not rise to the level of outrageous conduct necessary to set forth a claim for intentional infliction of emotional distress as outlined by the New Hampshire Supreme Court.  For that reason, Count VII of the Complaint must be dismissed on this additional ground.

### 5.    Count VIII (Request for Declaratory Judgment)

Count VIII states in its entirety:

> The Plaintiff incorporates the allegations contained in the preceding paragraphs.
>
> Plaintiff requests that the Court enter a judgment setting the correct amount of TD's allowed secured claim.

Complaint ¶¶ 74-75.  The Bank seeks to dismiss Count VIII on the grounds that it fails to state a claim for relief; instead, according to the Bank, Count VIII only requests relief.  The Debtor contends in his objection to the Motion to Dismiss that the Court has authority pursuant to 11 U.S.C. § 506 to determine the amount of the Bank's secured claim.  The Court agrees.  The Debtor, however, has not cited § 506 in Count VIII.  While Count VIII appears to be some sort of attempt to object to the Bank's claim at POC 7-1,[14] the allegations in the Complaint do not set forth an actual objection to the Bank's claim.  For example, the Debtor does not specifically outline what elements of the Bank's claim are incorrect, or what the correct amounts should be with respect to particular charges or even with respect to the prepetition default or the total amount owed.  Instead, Count VIII seeks simply declaratory relief.  Because Count VIII fails to state a claim upon which relief can be grant, it must be dismissed.[15]

---

[14] In his objection to the Motion to Dismiss the Debtor seems to state as much: "Plaintiff objected to TD's proof of claim by filing this proceeding."  Doc. No. 33 at 7.

[15] In so ruling, the Court does not mean to suggest that the Debtor cannot assert an objection to the Bank's claim at POC 7-1, only that he has not done so in the Complaint effectively.  The Court notes that the Debtor is not required to file an adversary proceeding to object to the Bank's claim.  See Fed. R. Bankr.

## V.  CONCLUSION

For the reasons set forth above, the Court shall enter a separate order granting the Motion to Dismiss as to all counts of the Debtor's Complaint.  This opinion constitutes the Court's conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052.

ENTERED at Concord, New Hampshire.


Date:   February 7, 2018          /s/ Bruce A. Harwood
                                  Bruce A. Harwood
                                  Chief Bankruptcy Judge

---

P. 7001 (setting forth the matters that must be determined in an adversary proceeding).  Instead, the Debtor may simply file an objection in accordance with the requirements of Federal Rule of Bankruptcy Procedure 3007.